In The

# United States Court of Appeals

for the Sixth Circuit

SENATOR JONATHAN LINDSEY, SENATOR JAMES RUNESTAD, REPRESENTATIVE JAMES DESANA, REPRESENTATIVE RACHELLE SMIT, REPRESENTATIVE STEVE CARRA, REPRESENTATIVE JOSEPH FOX, REPRESENTATIVE MATT MADDOCK, REPRESENTATIVE ANGELA RIGAS, REPRESENTATIVE JOSH SCHRIVER, REPRESENTATIVE NEIL FRISKE, AND REPRESENTATIVE BRAD PAQUETTE,
*Plaintiffs–Appellants,*

v.

GRETCHEN WHITMER, IN HER OFFICIAL CAPACITY AS GOVERNOR OF MICHIGAN, OR HER SUCCESSOR; JOCELYN BENSON, IN HER OFFICIAL CAPACITY AS MICHIGAN SECRETARY OF STATE, OR HER SUCCESSOR, AND JONATHAN BRATER, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF ELECTIONS, OR HIS SUCCESSOR,
*Defendants–Appellees.*

**Appeal from the United States District Court, Western District of Michigan, Case No. 1:23-cv-01025, Hon. Jane Beckering**

**Principal Brief of Plaintiffs-Appellants**

Erick G. Kaardal (MN No. 229647)
Elizabeth A. Nielsen (MI No. P87437)
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: 612 341-1074
Email: kaardal@mklaw.com
Email: nielsen@mklaw.com

*Counsel for Appellants*

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................ i

TABLE OF CITATIONS ............................................................................ iv

STATEMENT IN SUPPORT OF ORAL ARGUMENT ............................ x

STATEMENT OF JURISDICTION .......................................................... 1

STATEMENT OF THE ISSUE .................................................................. 1

STATEMENT OF THE CASE .................................................................... 2

I.    The U.S. Constitution Elections Clause directs that federal elections shall be prescribed by the state legislature, but citizen-petition-led ballot proposals to the Michigan constitution regulating federal elections continue to be successfully allowed (2018 and 2022) without state legislative participation. ......................................................................... 2

    A.    The legislative power is defined as, and vested to, a senate and house of representatives in the Michigan State Constitution ................... 3

    B.    Amending the State Constitution is accomplished by citizen-initiatives or by legislatively-referred amendments ..................................... 5

        1.    The gravamen of the complaint is the Appellees' continued use of Michigan Constitution, art. XII, § 2 to regulate federal elections without state legislative participation ............................... 6

        2.    Ballot Proposal 3 of 2018 regulated the times, places, and manner of elections without involving the legislative branch ........ 6

        3.    Ballot Proposal 2 of 2022 regulated the times, places, and manner of elections without involving the legislative branch ........ 7

II.   The district court granted Defendant-Appellants' motion to dismiss for lack of subject matter jurisdiction ......................................................... 8

SUMMARY OF THE ARGUMENT ........................................................... 9

ARGUMENT ............................................................................................. 11

Standard of Review ................................................................................... 11

I.    The Elections Clause creates § 1983-enforceable individual rights or
      privileges for Legislator-Appellants, separate and apart from the State
      Legislature ................................................................................... 12

II.   The Legislator-Appellants have met the Article III standing requirements ...... 18

      A.    The Appellees' use of the state constitutional amendment process
            to regulate federal elections without state legislative participation is
            the context in which Legislator-Appellants' standing is found .............. 19

      B.    The Supremacy Clause, applied to the Elections Clause, prohibits
            state constitutional amendment processes from excluding state
            legislators from participating in law-marking regarding the
            regulation of federal elections ................................................ 20

      C.    Legislator-Appellants have defined rights or privileges under the
            Elections Clause that are violated by the Appellees' constitutional
            amendment process regulating federal elections without state
            legislative participation ........................................................ 22

      D.    Legislator-Appellants have defined, individual powers under the
            Michigan State Constitution that are not given to the electorate ........... 24

      E.    Legislator-Appellants have met all of the standing requirements .......... 30

III.  Precedent exists to support holding that Legislator-Appellants have
      concrete injuries particularized to them due to their federal rights or
      privileges granted under the Elections Clause being violated by Appellees'
      misuse of the state constitutional amendment process regulating federal
      elections without state legislative participation ..................................... 31

      A.    Courts recognize individual legislator standing in specific
            circumstances ...................................................................... 32

      B.    There are current barriers on Legislator-Appellants voting in the
            constitutional amendment process and regarding the results of the
            constitutional amendment process ............................................ 39

CONCLUSION ............................................................................................ 42

CERTIFICATE OF COMPLIANCE ............................................................................ 43

USE OF AI TECHNOLOGY CERTIFICATION ...................................................... 44

CERTIFICATE OF SERVICE ................................................................................... 45

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS .............. 46

# TABLE OF CITATIONS

## CASES

*Am. Legion v. Am. Humanist Ass'n,*
588 U.S. 29 (2019)..................................................................................... 9, 15

*Arizona State Legislature v. Arizona Indep. Redistricting Commn.,*
576 U.S. 787 (2015)..................................................................... 29, 32, 37, 38

*Armstrong v. Exceptional Child Ctr., Inc.,*
575 U.S. 320 (2015).......................................................................................... 20

*Blessing v. Freestone,*
520 U.S. 329 (1997)................................................................................... 13, 18

*Burwell v. Hobby Lobby Stores, Inc.,*
573 U.S. 682 (2014)................................................................................... 9, 15

*Chapman v. Houston Welfare Rights Organization,*
441 U.S. 600 (1979).......................................................................................... 20

*Cherry Hill Vineyards, LLC v. Lilly,*
553 F.3d 423 (6th Cir. 2008)......................................................................... 11

*Citizens United v. Fed. Election Comm'n,*
558 U.S. 310 (2010).......................................................................................... 16

*Coleman v. Miller,*
307 U.S. 433 (1939).................................................11, 30, 32, 33, 34, 35, 36, 37, 38

*Colon-Marrero v. Velez,*
813 F.3d 1 (1st Cir. 2016).................................................................... 13, 14, 18

*Crawford v. United States Department of Treasury,*
868 F.3d 438 (6h Cir. 2017)........................................................................... 17

*D.C. v. Heller,*
554 U.S. 570 (2008)................................................................................... 15, 16

*Davis v. FEC,*
554 U.S. 724 (2008) ................................................................. 17

*Dennis v. Luis,*
741 F.2d 628 (3d Cir. 1984) .................................................... 38

*Diamond v. Charles,*
476 U.S. 54 (1986) ................................................................... 19

*Dodak v. State Administrative Bd.,*
495 N.W.2d 539 (Mich. 1993) ...............................4, 33, 38, 39

*Flast v. Cohen,*
392 U.S. 83 (1968) ................................................................... 19

*Fumo v. City of Philadelphia,*
972 A.2d 487 (Pa. 2009) .......................................................... 39

*Gibbons v. Ogden,*
9 Wheat. 1, 6 L.Ed. 23 (1824) ................................................. 20

*Golden State Transit Corp. v. Los Angeles,*
493 U.S. 103 (1989) ................................................................. 20

*Goldwater v. Carter,*
617 F.2d 697 (D.C. Cir. 1979), *vacated on other grounds*, 444 U.S. 996 (1979) ....... 17, 23

*Gonzaga Univ. v. Doe,*
536 U.S. 273 (2002) ...............................................12, 13, 14

*Hollingsworth v. Perry,*
570 U.S. 693 (U.S. 2013) ........................................................ 19

*Kennedy v. Sampson,*
167 U.S. App. D.C. 192, 511 F.2d 430 (1974) ........................ 38

*Moore v. Harper,*
600 U.S. 1 (2023) ............................................... x, 9, 13, 21, 25

*Mothering J. v. Atty. Gen.,*
5 N.W.3d 54 (Mich. App. 2023), *appeal granted*, 991 N.W.2d 198 (Mich. 2023) ....... 17

*Mothering J. v. Atty. Gen.,*
  No. 362271, 2023 WL 444874 (Mich. App. Jan. 26, 2023), appeal granted, 991
  N.W.2d 198 (Mich. 2023) ............................................................................ 27

*Parsons v. U.S. Dep't of Just.,*
  801 F.3d 701 (6th Cir. 2015).................................................................... 11

*Providence Baptist Church v. Hillandale Comm., Ltd.,*
  425 F.3d 309 (6th Cir. 2005)..................................................................... 19

*Raines v. Byrd,*
  521 U.S. 811 (1997)..........................................................33, 34, 35, 36, 37, 38

*Rancho Palos Verdes,*
  544 U.S. 113 (2005)................................................................................ 14

*Rohde v. Ann Arbor Pub. Schools,*
  737 N.W.2d 158 (Mich. 2007) ................................................................ 38

*Romer v. Colorado Gen. Assembly,*
  810 P.2d 215 (Colo. 1991) ...................................................................... 39

*Silver v. Pataki,*
  755 N.E.2d 842 (NY. Ct. App. 2001) ..................................................... 33

*Smiley v. Holm,*
  285 U.S. 355 (1932).................................................................................. 22

*Storer v. Brown,*
  415 U.S. 724 (1974).................................................................................. 23

*State by and through Tennessee Gen. Assembly v. U.S. Dept. of State,*
  931 F.3d 499 (6th Cir. 2019).............................................x, 8, 9, 30, 32, 40, 41

*Virginia House of Delegates v. Bethune-Hill,*
  587 U.S. 658 (2019)..............................................................x, 8, 31, 32, 37, 38

*Wisconsin Legislature v. Palm,*
  942 N.W.2d 900 (Wis. 2020) .................................................................. 39

*Wright v. Roanoke Redev. & Hous. Auth.*,
  479 U.S. 418 (1987) ................................................................ 13

## CONSTITUTION

U.S. Const. art. I, § 4 ........................................... 1, 2, 10, 22, 24

U.S. Const. art. III ...................................1, 9, 10, 15, 18, 19, 20, 30, 40, 41

U.S. Const. art. V ................................................................ 33, 37

U.S. Const. art. VI ................................................................ 10

U.S. Const. art. VI, cl. 2 ...................................................... 20

Mich. Const. art. II, § 4(2) .................................................. 28

Mich. Const. art. II, § 5(2) .................................................... 7

Mich. Const. art. II, § 9 ...............................................5, 17, 27

Mich. Const. art. IV, § 1 ...............................................3, 25, 29, 36

Mich. Const. art. IV, § 6 ...................................................... 3

Mich. Const. art. IV, § 22 .................................................. 4, 25

Mich. Const. art. XII .......................................................... 5

Mich. Const. art. XII, § 1 .................................................... 5

Mich. Const. art. XII § 2 ..................... 2, 5, 6, 7, 10, 26, 27, 28, 36

Mich. Const. art. XII, § 3 .................................................... 5

## STATUTES AND RULES

28 U.S.C. § 1291 ................................................................ 1

28 U.S.C. § 1331 ................................................................ 1

28 U.S.C. § 1343(a)(3) ................................................................... 1

28 U.S.C. § 1391(b) ...................................................................... 1

42 U.S.C. § 1983 ........................................................ 1, 9, 12, 18, 41

Fed. R. Civ. P. 12(b)(1) ............................................................. 8, 11

Fed. R. Civ. P. 12(b)(6) ................................................................. 8

**OTHER AUTHORITIES**

*Duty*, Oxford Languages,
   https://www.google.com/search?q=duty+defined&rlz=1C1GCEU_enUS926U
   S926&oq=duty+defined&gs_lcrp=EgZjaHJvbWUyCQgAEEUYORiABDIICA
   EQABgWGB4yCAgCEAAYFhgeMggIAxAAGBYYHjIICAQQABgWGB4yCA
   gFEAAYFhgeMgoIBhAAGA8YFhgeMg0IBxAAGIYDGIAEGIoFMg0ICBAA
   GIYDGIAEGIoFMg0ICRAAGIYDGIAEGIoFqAIIsAIB&sourceid=chrome&
   ie=UTF-8 .................................................................................... 24

*Privilege*, Oxford Languages,
   https://www.google.com/search?q=meaning+of+%22privilege%22&rlz=1C1GC
   EU_enUS926US926&oq=meaning+of+%22privilege%22&gs_lcrp=EgZjaHJvbW
   UyBggAEEUYOTIHCAEQABiABDIHCAIQABiABDIHCAMQABiABDIHCA
   QQABiABDIHCAUQABiABDIHCAYQABiABDIHCAcQABiABDIHCAgQAB
   iABDIHCAkQABiABNIBCTkxOTNqMGoxNagCALACAA&sourceid=chrome
   &ie=UTF-8 ................................................................................... 24

Standing Rules of the House of Representatives in Accordance with the
   Michigan Constitution, Art. IV, § 13: Chapter II, Rules 12, 13;
   Chapter III, Rules 30, 31 ......................................................... 4, 25, 36

*Standing Rules of the House of Representatives in Accordance with the
   Michigan Constitution*, 102nd Leg. (2023-2024), available at
   https://www.legislature.mi.gov/Publications/rules/house_rules.pdf ...................... 4

Senate Rules: Chapter I, § 3, 1.302; Chapter III, § 1, 3.107; § 5, 3.505 ............... 4, 25, 36

*Senate Rules*, (April 28, 2015), available at https://www.legislature.mi.gov/
   documents/ 2015-2016/resolutionadopted/Senate/htm/2015-SAR-0043.htm ....... 4

Robert F. Williams, *The Law of American State Constitutions* (Oxford University Press 2009) ................................................................................................................... 24

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure and Sixth Circuit Rule 34(a), the Legislator-Appellants request oral argument. This appeal addresses legal issues regarding state legislator standing under the Elections Clause and regarding the creation of § 1983-enforceable rights or privileges for state legislators under the Elections Clause, separate and apart from the state legislature—where there is an alleged ongoing, complete usurpation of state legislative law-making power regulating federal elections by the Michigan Constitution's amendment process—which present important opportunities for the Sixth Circuit to clarify under what circumstances state legislator standing exists, if at all, perhaps clarifying the decision of this Court in *State by and through Tennessee Gen. Assembly v. U.S. Dept. of State*, 931 F.3d 499 (6th Cir. 2019), in light of recent Supreme Court decisions, such as *Virginia H. of Delegates v. Bethune-Hill,* 587 U.S. 658 (2019) and *Moore v. Harper*, 600 U.S. 1 (2023).

## STATEMENT OF JURISDICTION

The U.S. District Court for the Western District of Michigan has jurisdiction over this ongoing case and controversy arising under the "Elections Clause" of the U.S. Constitution, Article I, section 4, pursuant to Article III of the U.S. Constitution, 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983. Venue was proper under 28 U.S.C. § 1391(b) because all events giving rise to Plaintiffs' claims are occurring in the State of Michigan. On April 10, 2024 the district court entered final judgment dismissing Plaintiff's complaint for lack of subject-matter jurisdiction on the basis of standing. Plaintiffs timely filed their appeal to this Court on May 8, 2024. Opinion, R-25, Page ID # 300-13; Judgment, R-26, Page ID # 313; Notice of Appeal R.-27, Page ID # 314-15. This Court has jurisdiction to consider this appeal from a final decision of a district court under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether state legislators have standing to sue state executive officials for enacting and continuing to permit and enforce Michigan citizen-initiated petition-and--ballot amendments to the state constitution regulating federal elections, without state legislative participation, in violation of the state legislators' § 1983-enforceable individual rights or privileges under the Elections Clause.

# STATEMENT OF THE CASE

**I. The U.S. Constitution Elections Clause directs that federal elections shall be prescribed by the state legislature, but citizen-petition-led ballot proposals to the Michigan constitution regulating federal elections continue to be successfully allowed (2018 and 2022) without state legislative participation.**

Appellants, two Michigan state senators and nine state representatives, (Legislator-Appellants) sought to restore their constitutional duty and authority to regulate the time, place, and manner of federal elections in Michigan as designated by the Elections Clause of the United States Constitution. U.S. Const. art 1, sec. 4. Complaint, R. 1, Page ID # 1-16. The Elections Clause states: "The Times, Places, and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators." U.S. Const. art. 1, § 4.

Specifically, the Legislator-Appellants sought declaratory judgment that "the use of the petition-and-state-ballot-proposal process under the Michigan Constitution, Art. XII, Sec. 2, for regulation of times, places, and manner of federal elections is unconstitutional and violates the Elections Clause because the state legislature's approval and the state legislators' participation are not required, and that the process violated Plaintiffs' federal rights under the Elections Clause." Complaint, R. 1, Page ID # 15. *See also,* Opinion and Order, R. 25, Page ID # 303. The Legislator-Appellants sought injunctive relief because the same petition-and-state-ballot-proposal

process is always available and can be used again to amend the State's Constitution to regulate the times, places, and manner of federal elections. *Id.* ¶ 48, R. 1, Page ID # 15. *See also,* Opinion and Order, R. 25, Page ID # 303.

Defendant-Appellees Governor Gretchen Whitmer, Secretary of State Jocelyn Benson, and Director of Elections Jonathan Brater are Michigan executive-branch officials with duties to execute and enforce the law. Complaint, R. 1 Page ID # 5. Secretary Benson and Director Brater specifically have authority with respect to supervising and administering elections, and election laws. *Id.* Legislator-Appellants sought injunctive and declaratory relief to prevent future use of the petition-and-ballot proposal process to regulate federal elections, and to declare that the 2018 and 2022 constitutional amendments have no legal effect on the state legislators enacting of laws to regulate federal elections. *Id.* at Page ID # 2, 15-16.

## A. The legislative power is defined as, and vested to, a senate and house of representatives in the Michigan State Constitution.

The Michigan Constitution expresses the state's vested legislative power is within a senate and a house of representatives, under Article IV, § 1:

> Except to the extent limited or abrogated by article IV, section 6 or article V, section 2, the legislative power of the State of Michigan is vested in a senate and a house of representatives.[1]

---

[1] Article IV, § 6 specifically provides legislative authority to independent citizens redistricting commissions for redistricting state legislative and congressional districts.

As elected members of either the Senate or House of Representatives, in order to pass bills under Art. IV, § 22, each chamber provides the rules and methodology to ensure each member has that opportunity to vote "yea" or "nay" on any question put before them, that is, on any particular bill. *See e.g.,* Standing Rules of the House of Representatives in Accordance with the Michigan Constitution, Art. IV, § 13: Chapter II, Rules 12, 13; Chapter III, Rules 30, 31;[2] Senate Rules: Chapter I-Section 3, 1.302; Chapter III, § 1, 3.107; § 5, 3.505.[3] Plaintiff's Brief in Opposition to Motion to Dismiss, R. 12, Page ID # 222-223.

Notably, the Michigan Supreme Court recognizes standing for state legislators when their individual rights or privileges to vote are nullified or usurped. *Id.* (citing *Dodak v. State Administrative Bd.,* 495 N.W.2d 539, 545 (Mich. 1993)).

The Michigan Constitution reserves certain powers to citizens regarding the ability to propose and reject laws:

> The people reserve to themselves the power to propose laws and to enact and reject laws, called the initiative, and the power to approve or reject laws enacted by the legislature, called the referendum.

---

[2] *Standing Rules of the House of Representatives in Accordance with the Michigan Constitution*, 102nd Leg. (2023-2024), available at https://www.legislature.mi.gov/Publications/rules/house_rules.pdf (last visited June 27, 2024).

[3] *Senate Rules*, (April 28, 2015), available at https://www.legislature.mi.gov/documents/2015-2016/resolutionadopted/Senate/htm/2015-SAR-0043.htm (last visited June 27, 2024).

Mich. Const., art. II, § 9. However, the Michigan Constitution also expresses a limitation to citizen ballot petitioning authority not to supersede legislative branch powers—those reserved in "this constitution:"

> The power of initiative extends only to laws which the legislature may enact *under this constitution.*

*Id.* (emphasis added).

**B. Amending the State Constitution is accomplished by citizen-initiatives or by legislatively-referred amendments.**

Article XII of the Michigan Constitution, titled "Amendment and Revision," lays out the ways the state constitution may be altered. First, in art. XII § 1, constitutional amendments may occur by legislative proposal (agreed to by two-thirds of the members of each house), followed by a vote of electors. Second, art. XII § 2 provides that amendment may be made without the legislative branch through a citizen-initiated petition ballot measure. Third, art. XII § 3 allows a general revision of the constitution through a constitutional convention. Mich. Const. art. XII, §§ 1, 2, 3. *See also,* Complaint, R. 1, Page ID # 6-7 (¶¶ 24-31).

In this case, Michigan voters, under the process of Michigan Constitution, art. XII, § 2, amended the state's constitution by citizen-initiated ballot measures in 2018 (Proposal 3) and in 2022 (Proposal 2).[4] Legislator-Appellants allege that both the 2018

---

[4] There were additional amendment-by-petition proposals in both 2018 and 2022 under Mich. Const. art XII § 2. Legislator-Appellants complaint only relates to those proposals known 2018's Proposal 3 and 2022's Proposal 2, and any references to the 2018 and 2022 amendments are to those specific proposals.

and 2022 constitutional amendment regulate federal elections. Plaintiff's Brief in Opposition to Motion to Dismiss, R. 12, Page ID # 224. Neither the 2018 nor 2022 constitutional amendments had state legislative approval. *Id.*

> 1. **The gravamen of the complaint is the Appellees' continued use of Michigan Constitution, art. XII, § 2 to regulate federal elections without state legislative participation.**

The governmental officials, the Appellees in this case, defend the use of the process of the Michigan Constitution, art. XII, § 2 to regulate federal elections without state legislative participation. It is the government officials' approval of this process that is the gravamen of the complaint. Complaint, R. 1, Page ID 7-9.

> 2. **Ballot Proposal 3 of 2018 regulated the times, places, and manner of elections without involving the legislative branch.**

In 2018, pursuant to the process of Michigan Constitution, art. XII, § 2, Michigan voters approved Michigan Ballot Proposal 3. The proposal reformed Michigan elections by protecting the right to a secret ballot, ensuring access to ballots for military and overseas voters, adding straight-ticket voting, automatically registering voters, allowing any citizen to vote at any time, provided they have a proof of residency, allowing access to absentee ballots for any reason, and auditing election results. Complaint, R. 1, Page ID # 7-8 (¶¶ 34, 37, 38). But, in so doing, Proposal 3, as the Legislator-Appellants alleged, regulated the times, places and manner of federal elections by amending Section 4 of Article II of the Michigan Constitution. *See id.* at Page ID # 8 ¶¶ (35-36); Complaint Exhibit A, R. 4 Page ID # 24-25.

Notably, Proposal 3, as an amendment to the state constitution, preserved the rights of legislators to enact laws regarding the "time, place, and manner of all…elections" under the Michigan Constitution or the U.S. Constitution:

> (2) <u>Except as otherwise provided in this constitution or in the constitution or laws of the United States,</u> the legislature shall enact laws to regulate the time, place and manner of all nominations and elections….

Complaint Exhibit A, R. 4, Page ID # 25. (underlining in original identifying new language); Mich. Const. art. 2 § 5(2).

### 3. Ballot Proposal 2 of 2022 regulated the times, places, and manner of elections without involving the legislative branch.

In 2022, pursuant to the process of Michigan Constitution, art. XII, § 2, another citizen-initiated ballot measure resulted in another amendment to the Michigan Constitution regulating federal elections: Michigan Ballot Proposal 2, the "Right to Voting Policies Amendment," also known as "Promote the Vote." Complaint, R. 1 Page ID # 8 (¶¶ 39, 41). The amendment changed or modified voting procedures in the state, including federal elections. *See id.* at Page ID # 9 (¶ 45). Despite an apparent reservation of legislative authority provided "in this constitution or in the constitution or laws of the United States…," the initiated constitutional amendment process was used to amend the Michigan Constitution to regulate the times, places, and manner of federal elections. *Id.* (¶ 50).

## II. The district court granted Defendant-Appellants' motion to dismiss for lack of subject matter jurisdiction.

The Defendant-Appellees, in lieu of filing an answer to the underlying complaint, moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Defendant's Motion to Dismiss, R. 15, Page ID # 173-175. Defendant-Appellees additionally argued Legislator-Appellants should also be dismissed for failure to state a claim for which relief could be granted under Rule 12(b)(6), based upon governing precedent. Defendant's Brief in Support of Motion to Dismiss, R. 16, Page ID # 176-205. The district court did not reach the merits of the Legislator-Appellants claims under the standards of Rule 12(b)(6) having reached the conclusion that the court lacked subject matter jurisdiction.[5]

In finding the lack of subject matter jurisdiction, the district court opined that the individual Legislator-Appellants did not have an individualized injury, but merely an institutional injury: "Plaintiffs' asserted injury—the deprivation of the power to cast a binding vote—is neither concrete nor particularized because it is shared by every single member of the Michigan Legislature." Order and Opinion, R. 25, Page ID # 309. To reach its conclusion the court relied upon, in particular, the U.S. Supreme Court decision in *Virginia H. of Delegates v. Bethune-Hill*, 587 U.S. 658 (2019)

---

[5] The Legislator-Appellants also made claims of taxpayer and voter standing that the district court also dismissed. Order and Opinion, R 25, Page ID# 309-311. Those arguments will not be made or otherwise addressed in this appeal.

and this Court's decision in *State by and through Tennessee Gen. Assembly v. U.S. Dept. of State*, 931 F.3d 499 (6th Cir. 2019). *Id.*

This appeal followed. Notice of Appeal, R. 27 Page ID # 314-315.

## SUMMARY OF THE ARGUMENT

Legislators-Appellants under 42 U.S.C. § 1983 are injured as members of the discrete class of beneficiaries provided with the constitutional rights or privileges to regulate federal elections under the Elections Clause. The Elections Clause grants specifically to the state legislators the federal rights and privileges to regulate federal elections, and although they can be constrained somewhat by a state constitution (e.g., Gubernatorial veto and legislative rules), *Moore v. Harper*, 600 U.S. 1, 28 (2023), there is no authority for a state constitutional-amendment-by-petition process to completely nullify the state legislators' federal rights or privileges to regulate federal elections.

The word "legislature" in the Elections Clause confers federal rights onto the individual state legislators, who are the real persons who make up the "legislature." The "usual demands of Article III, requir[e] a real controversy with real impact on real persons to make a federal case out of it." *Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29, 34 (2019). By analogy, the U.S. Supreme Court has opined that the purpose of extending rights to corporations is to protect the rights of the people associated with the corporation. *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 706–07 (2014).

The word "legislature" is similar to other constitutionally-described entities that have secured constitutional "rights of the people," such as the word "militia"

9

mentioned in the Second Amendment, and the word "press" in the First Amendment. The word "militia" in the Second Amendment and the word "press" in the First Amendment refer to the individuals who comprise the group as well as the group. Similarly, the Elections Clause's word "legislature" prescribes federal rights or privileges for individual legislators as members of the "legislature."

Thus, the eleven individual state Legislator-Appellants have Article III standing to sue the Appellees who use a state constitutional amendment-by-petition process to regulate federal elections that entirely bypasses the legislative branch. The U.S. Constitution's Supremacy Clause (art. VI) ensures that the federal constitution is the supreme law of the land. The Appellees' claim that Michigan's state constitutional amendment-by-petition process is "supreme" cannot stand.

The Elections Clause states that: "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof…" U.S. Const. art. I, § 4.  The gravamen of the complaint is the Appellees' continued use of Michigan Constitution, art. XII, § 2 to regulate federal elections without state legislative participation. In 2018, in 2022, and now, Defendants allow, support, and enforce an amendment-by-petition process under Mich. Const. art. XII § 2, which regulates federal elections, but completely bypasses the legislature.

In this case, Legislator-Appellants have had their federal rights overridden and virtually held for naught due to aberrant procedural missteps regarding Michigan's state regulation of federal elections. State legislators have "a plain, direct and adequate

interest in maintaining the effectiveness of their votes." *See, Coleman v. Miller,* 307 U.S. 433 (1939). *Coleman* held that individual state legislators standing exists, concerning individual state legislators rights under the Article V constitutional amendment process. *Id.* at 438. Under such circumstances, individual legislators have standing to sue in federal court. *Id.* Legislator-Appellants are suffering ongoing, particularized and concrete injuries because the Appellees authorize constitutional amendments regulating federal elections to bypass the legislative branch and because the 2018 and 2022 constitutional amendments purporting to regulate federal elections are being given legal effect when their enactment is invalid under the Elections Clause.

## ARGUMENT

### Standard of Review

This Court reviews a district court's dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing *de novo. Parsons v. U.S. Dep't of Just.*, 801 F.3d 701, 709 (6th Cir. 2015). As this matter is before this Court on appeal from grant of a motion to dismiss, all material allegations of the complaint must be accepted as true, and construed in favor of the complaining party. *Id.* at 706. Additionally, this Court reviews questions of law as to the constitutionality of state law *de novo. Cherry Hill Vineyards, LLC v. Lilly*, 553 F.3d 423, 428 (6th Cir. 2008).

## I. The Elections Clause creates § 1983-enforceable individual rights or privileges for Legislator-Appellants, separate and apart from the State Legislature.

The district court failed to recognize that the Elections Clause creates § 1983-enforceable individual rights or privileges for Legislator-Appellants. If the district court had done so, it would have agreed with the Legislator-Appellants that their federal rights or privileges are separate and apart from the State Legislature.

The Legislator-Appellants' complaint alleges that individual state legislators have federal rights or privileges under the Elections Clause protectable under 42 U.S.C. § 1983. *See, e.g.,* Complaint, R. 1, Page ID # 1 (¶ 1). The Civil Rights Act, 42 U.S.C. § 1983, provides a private cause of action when federal rights or privileges are violated by a person under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress….

Although 42 U.S.C. § 1983 does not itself confer federal rights, § 1983 "provides a mechanism for enforcing individual rights 'secured' elsewhere, i.e., rights independently 'secured by the Constitution and laws' of the United States." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002). People seeking relief through § 1983 do "not have the burden of showing an intent to create a private remedy because § 1983

12

generally supplies a remedy for the vindication of rights secured by federal statutes" or by the federal constitution. *Id.*

The U.S. Supreme Court requires an "unambiguously conferred right to support a cause of action brought under § 1983." *Id.* Three factors are identified for the Court to consider:

> First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

*Colon-Marrero v. Velez*, 813 F.3d 1, 17 (1st Cir. 2016), (quoting *Blessing v. Freestone*, 520 U.S. 329 (1997) (quoting *Wright v. Roanoke Redev. & Hous. Auth.*, 479 U.S. 418, 431 (1987)) (citations omitted).

In *Moore v. Harper*, 600 U.S. 1 (2023), the Supreme Court held that the Elections Clause does not vest such independent authority in state legislatures as to escape the normal checks and balances by other branches. Therefore, the Supreme Court did not bar the North Carolina Supreme Court from reviewing the North Carolina legislature's congressional districting plans for compliance with North Carolina law.

Nonetheless, in this case, the Legislator-Appellants have federal rights or privileges "secured" under the Elections Clause for the opportunity to vote on bills regarding the times, places and manner of federal elections. *See* Complaint, R. 1, Page

ID # 6 (¶ 21). As the complaint alleges, the Legislator-Appellants are members of the state legislature and, as members, were injured through the misuse of Michigan's constitutional amendment process, thus depriving them of those federal rights or privileges:

> Defendants cause injury to Plaintiffs when they supported and enforced laws and when they support and enforce constitutional provisions enacted through the petition and ballot question processes that usurp the state legislature's powers and violate the state legislator's federal rights under the Elections Clause.

*Id.* at Page ID # 13 (¶ 72).

Thus, the first § 1983 factor—the intent to benefit the Legislator-Appellants—is established. Under the Elections Clause, the legislators are the intended "class" of beneficiaries to which the Legislator-Appellants belong. *Rancho Palos Verdes*, 544 U.S. 113, 120(2005); see also, *Gonzaga Univ.* 536 U.S. at 281. The targeted portion of the Elections Clause fits comfortably among federal legal provisions found to create individually enforceable rights because of their "'unmistakable focus on the benefited class.'" *Colon-Marrero*, 813 F.3d at 17, quoting *Gonzaga Univ.* 536 U.S. at 287. The Elections Clause text specifies the "legislature," which as defined under the Michigan Constitution identifies the discrete class of beneficiaries, here, the Legislator-Appellants. In that regard, the Legislator-Appellants have a federal right or privilege to vote on Michigan's federal election regulations. That is what the Elections Clause requires.

The word "legislature" in the Elections Clause confers federal rights onto the individual state legislators, who are the real persons who make up the legislature. The "usual demands of Article III, requir[e] a real controversy with real impact on real persons to make a federal case out of it." *Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29, 34 (2019).

By analogy, the U.S. Supreme Court has opined that the purpose of extending rights to corporations is to protect the rights of the people associated with the corporation:

> When rights, whether constitutional or statutory, are extended to corporations, the purpose is to protect the rights of these people.

*Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 706–07 (2014).

The word "legislature" is similar to other constitutionally-described entities that have secured constitutional "rights of the people," such as the word "militia" mentioned in the Second Amendment, and the word "press" mentioned in the First Amendment. The Elections Clause's identification of "legislature" prescribes federal rights or privileges for individual legislators who are the real persons comprising the entity "legislature."

For example, the Second Amendment identifies the Militia as an entity "comprised all males physically capable of acting in concert for the common defense." *D.C. v. Heller*, 554 U.S. 570, 580 (2008). But, individual people make up the militia. "[T]he "militia" in colonial America consisted of a subset of "the people"—

those who were male, able bodied, and within a certain age range." *Id.* at 580. The

individual members of the militia carried their guns just as the individual members of

the legislature cast their votes. An entity cannot bear arms–only the people who are

members of the entity bear guns.

And, there is no "press" without individuals who are writing and editing and

publishing. The "press" is also an entity comprised of individual people:

> The freedom of "the press" was widely understood to protect the
> publishing activities of individual editors and printers…Their
> activities were not stripped of First Amendment protection simply
> because they were carried out under the banner of an artificial legal
> entity. And the notion which follows from the dissent's view, that
> modern newspapers, since they are incorporated, have free-speech
> rights only at the sufferance of Congress, boggles the mind.

*Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 390 (2010).

Thus, similar to a corporation, a "Militia," or "the Press," state legislators are a

small, particular class of elected citizens who make up the entity, the legislature. Only

148 of Michigan's 10 million citizens are members of the state legislature. The

Elections Clause grants those 148 state legislators unique, constitutional rights or

privileges to regulate federal elections.

But, the Appellees' ballot constitutional amendment process in Michigan

completely nullifies the Legislator-Appellants' rights or privileges to regulate federal

elections. It happened in 2018. It happened in 2022. It will happen again. The

Appellees' continuing use of this state constitutional amendment process is a

complete disenfranchisement, a complete nullification, and complete withdrawal of

Legislator-Appellants' voting opportunities, as found within the Senate and House of Representative rules. *Goldwater*, 617 F.2d at 702. The Appellees' constitutional amendment process leaves no constitutional option for the Legislators to vote in the way they claim is their right under the Elections Clause.

Even if a bill were put before the Legislator-Appellants regarding federal elections that purported to repeal the 2018, 2022 or future amendments, any such vote would be a futile or a useless act. While legislators have some authority to act on a citizen initiative law under Article II, section 9, they have no legal authority to repeal a constitutional amendment or to pass laws that contravene the state's constitution. *See Mothering J. v. Atty. Gen.*, 5 N.W.3d 54, 68 (Mich. App. 2023), *appeal granted*, 991 N.W.2d 198 (Mich. 2023) (An "initiated law is not 'subject to the veto power of the governor,' and cannot 'be amended or repealed, except by a vote of the electors unless otherwise provided in the initiative measure or by ¾ of the members elected to and serving in each house of the legislature.'").

In addition, the district court's reference to *Crawford v. United States Department of Treasury*, 868 F.3d 438 (6h Cir. 2017), as support is misplaced, except, it reveals that standing can be asserted when derived from an imminent, rather than an actual, injury, but only when "the threatened injury is real, immediate, and direct." *Crawford*, 868 F.3rd at 454, quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008). Indeed, the injury alleged here is real and immediate.

The state constitutional amendment process, in a real and immediate way, is depriving federal rights or privileges that Legislator-Appellants are complaining about. Such amendments nullify any meaningful opportunity to Legislator-Appellants to introduce bills and vote on laws to regulate federal elections. The individual Legislator-Appellants in their legislation and in their votes cannot contradict or modify the dictates of enacted state constitutional amendments—no matter how improvidently enacted under the Elections Clause.

Although the district court did not reach the remaining § 1983 factors of the private-right inquiry, they are also satisfied. Order and Opinion, R. 25, Page ID # 309. Enforcing the federal rights of individual state legislators, as commanded under the Elections Clause, would impose no "'strain [on] judicial competence,' as the right is concrete and well-defined." *Colon-Marrero*, 813 F.3d at 20, quoting *Blessing v. Freestone*, 520 U.S. 329, 341 (1997). The specificity of the Elections Clause "directives shields against potentially disparate outcomes, bolstering the conclusion that the language is rights-creating." *Id.* (citation omitted). Furthermore, the Elections Clause language, requiring state legislators to prescribe the times, places and manner of federal elections, is couched in mandatory terms, "rather than precatory, terms,' and 'unambiguously impose a binding obligation.'" *Id.*

## II. The Legislator-Appellants have met the Article III standing requirements.

This appeal's question presented is whether under the circumstances, Legislator-Appellants have standing. "[A] party seeking to establish Article III

standing must show: (1) an injury in fact – an invasion of a legally protected interest

which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or

hypothetical, (2) a causal connection between the injury and the conduct complained

of, and (3) a likelihood of redressability by a favorable judgment." *Providence Baptist*

*Church v. Hillandale Comm., Ltd.*, 425 F.3d 309, 318 (6th Cir. 2005) (citing *Diamond v.*

*Charles*, 476 U.S. 54, 65 (1986)).

### A. The Appellees' use of the state constitutional amendment process to regulate federal elections without state legislative participation is the context in which Legislator-Appellants' standing is found.

The federal courts have authority under the U.S. Constitution to answer

constitutional questions only if necessary to do so in the course of deciding an actual

Article III "case" or "controversy." As used in the U.S. Constitution, those words do

not include every sort of dispute, but only those "historically viewed as capable of

resolution through the judicial process." *Flast v. Cohen,* 392 U.S. 83, 95 (1968). The

Supreme Court stated:

> This is an essential limit on our power: It ensures that we act *as judges,* and do not engage in policymaking properly left to elected representatives. For there to be such a case or controversy, it is not enough that the party invoking the power of the court have a keen interest in the issue. That party must also have "standing," which requires, among other things, that it have suffered a concrete and particularized injury.

*Hollingsworth v. Perry*, 570 U.S. 693, 700 (U.S. 2013). The Appellees defended, in the

district court, the state constitutional amendment process to regulate federal elections

without state legislative participation. The Legislator-Appellants identify that ongoing

legal dispute with the Appellees as the Article III case and controversy, causing an

ongoing concrete and particularized injury, and creating for them the constitutionally-

required standing.

### B. The Supremacy Clause, applied to the Elections Clause, prohibits state constitutional amendment processes from excluding state legislators from participating in law-marking regarding the regulation of federal elections.

The Supremacy Clause, U.S. Const. art. VI, cl. 2, reads:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

The U.S. Supreme Court has held that "[i]t is apparent that this Clause creates a

rule of decision: Courts 'shall' regard the 'Constitution,' and all laws 'made in

Pursuance thereof,' as 'the supreme Law of the Land.' They must not give effect to

state laws that conflict with federal laws." *Armstrong v. Exceptional Child Center, Inc.*, 575

U.S. 320, 324 (2015), quoting *Gibbons v. Ogden*, 9 Wheat. 1, 210, 6 L.Ed. 23 (1824). "It

is equally apparent that the Supremacy Clause is not the 'source of any federal rights,'"

*Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324–25 (2015) quoting *Golden*

*State Transit Corp. v. Los Angeles*, 493 U.S. 103, 107 (1989) (quoting *Chapman v. Houston*

*Welfare Rights Organization*, 441 U.S. 600, 613 (1979)), and certainly does not create a

cause of action. It instructs courts what to do when state and federal law clash, but is

silent regarding who may enforce federal laws in court and in what circumstances they

may do so. The Supremacy Clause explicitly identifies the U.S. Constitution as the "law."

Hence, the Elections Clause, as a clause within the U.S. Constitution, is the "law," specifically delineating the manner of state law-making regulating federal elections for senators and representatives. Pursuant to the Elections Clause, such state law-making is federally, constitutionally granted and reserved to state legislatures. The U.S. Supreme Court, in *Moore v. Harper*, explained both that such legislative authority regarding federal elections under the Elections Clause exists and that it is restrained under both the federal and state constitutions:

> When a state legislature carries out its constitutional power to prescribe rules regulating federal elections, the "commission under which" it exercises authority is two-fold. The Federalist No. 78, at 467. The legislature acts both as a lawmaking body created and bound by its state constitution, and as the entity assigned particular authority by the Federal Constitution. Both constitutions restrain the legislature's exercise of power.

*Moore v. Harper*, 600 U.S. 1, 27 (2023).

While a state's legislative branch may be constrained by both the U.S. and state constitutions, every state Constitution, in turn, is limited by the Supremacy Clause and the Elections Clause. Therefore, a state constitution may not authorize a violation of the Elections Clause pursuant to the Supremacy Clause. Legislator-Appellants allege the application of Michigan's amendment-by-petition process to regulate federal elections in Michigan violates the Elections Clause. The Supremacy Clause requires

such an interpretation because the Elections Clause is a federal law. The Michigan state constitution is not a federal law.

**C. Legislator-Appellants have defined rights or privileges under the Elections Clause that are violated by the Appellees' constitutional amendment process regulating federal elections without state legislative participation.**

The Elections Clause of the U.S. Constitution vests certain powers and privileges to "state legislatures" to participate in law-making regarding aspects of federal elections:

> The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof…

U.S. Const. art. I, § 4.

In *Smiley v. Holm*, 285 U.S. 355 (1932), the U.S. Supreme Court explained that the power to control the "times, places, and manner" necessarily includes aspects of election processes such as registering to vote and procedure:

> [A] complete code for congressional elections, not only as to times and places, but in relation to notices, registration, supervision of voting, protection of voters, prevention of fraud and corrupt practices, counting of votes, duties of inspectors and canvassers, and making and publication of election returns; in short, to enact the numerous requirements as to procedure and safeguards which experience shows are necessary in order to enforce the fundamental right involved.

*Id.* at 366.

Likewise, the same principle would apply to state legislative branches of government. In *Storer v. Brown*, 415 U.S. 724 (1974), the Supreme Court opined that

states may regulate "the time, place, and manner of holding primary and general elections, [as well as] the registration and qualifications of voters, and the selection and qualification of candidates." *Storer*, 415 U.S. at 730.

The Legislator-Appellants are not presenting to this Court the issue of what the "body-politic" of the legislature may or may not do regarding the passage of bills affecting federal elections. *Infra III*. The Legislator-Appellants are not making an allegation of the dilution of legislative power. Instead, they are claiming that their federally-guaranteed rights under the Elections Clause are being violated.

Legislator-Appellants have a particularized right or privilege under the Electors Clause, through the Michigan Constitution and rules of both the State House and Senate to have an opportunity to participate in enacting state laws regulating federal elections. The 2018, 2022 and future amendments deprived them and deprive them of the voting opportunities the Elections Clause guarantees. The constitutional injury is that the Legislator-Appellants are left with no independent authority to exercise their constitutional right to voting opportunities on federal election law in Michigan—a clear violation of the Elections Clause. The 2018, 2022 and future amendments to the State constitution regulating federal elections close the door for state legislative participation. *See Goldwater v. Carter*, 617 F.2d 697, 703 (D.C. Cir. 1979), *vacated on other grounds*, 444 U.S. 996 (1979).

### D. Legislator-Appellants have defined, individual powers under the Michigan State Constitution that are not given to the electorate.

"Legislature" is not defined by any federal constitutional provision. In fact, the

phrase, "in each State by the Legislature thereof" necessarily requires looking at a

state's constitution to identify what a "legislature" is. As one resource stated, "Article

I, Section 4 leaves the 'Times, Places, and Manor of holding Elections for Senators

and Representatives' to the state legislatures, which are in turn, governed by the state

constitutions."[6] In other words, the Election Clause preserves a right or privilege[7] or

duty[8] for the opportunity to enact laws governing federal elections. Notably in the

2023 session, the Supreme Court has recognized state legislative powers under the

---

[6] Robert F. Williams, *The Law of American State Constitutions* 19 (Oxford University Press, 2009).

[7] "Privilege" is defined as "a special right, advantage, or immunity granted or available only to a particular person or group." *Privilege*, Oxford Languages, https://www.google.com/search?q=meaning+of+%22privilege%22&rlz=1C1GCEU _enUS926US926&oq=meaning+of+%22privilege%22&gs_lcrp=EgZjaHJvbWUyBg gAEEUYOTIHCAEQABiABDIHCAIQABiABDIHCAMQABiABDIHCAQQABi ABDIHCAUQABiABDIHCAYQABiABDIHCAcQABiABDIHCAgQABiABDIHC AkQABiABNIBCTkxOTNqMGoxNagCALACAA&sourceid=chrome&ie=UTF-8 (last visited July 1, 2024).

[8] "Duty" is defined as a "a moral or legal obligation; a responsibility" or "a task or action that someone is required to perform." *Duty*, Oxford Languages, https://www.google.com/search?q=duty+defined&rlz=1C1GCEU_enUS926US926 &oq=duty+defined&gs_lcrp=EgZjaHJvbWUyCQgAEEUYORiABDIICAEQABgW GB4yCAgCEAAYFhgeMggIAxAAGBYYHjIICAQQABgWGB4yCAgFEAAYFhge MgoIBhAAGA8YFhgeMg0IBxAAGIYDGIAEGIoFMg0ICBAAGIYDGIAEGIoF Mg0ICRAAGIYDGIAEGIoFqAIIsAIB&sourceid=chrome&ie=UTF-8 (last visited July 1, 2024).

Elections Clause in a more specific way consistent with Legislator-Appellants' line of reasoning in this case:

> The legislature acts both as a lawmaking body created and bound by its state constitution, and as the entity assigned particular authority by the Federal Constitution.

*Moore v. Harper*, 600 U.S. 1, 27 (2023). As explained above, the rights or privileges of the Elections Clause extend to state legislators in Michigan.

The Michigan Constitution expresses the state's vested legislative power within a senate and a house of representatives, under Article IV, § 1:

> Except to the extent limited or abrogated by article IV, section 6 or article V, section 2, the legislative power of the State of Michigan is vested in a senate and a house of representatives.

And, as elected members of either the Senate or House of Representatives, in order to pass bills under art. IV, § 22, each chamber provides the rules and methodology to ensure each individual legislator, as a member, has that opportunity to vote "yea" or "nay" on any question put before them, that is, on any particular bill. *See e.g.*, Standing Rules of the House of Representatives in Accordance with the Michigan Constitution Art. IV, § 13: Chapter II, Rules 12, 13; Chapter III, Rules 30, 31; Senate Rules: Chapter I § 3, 1.302; Chapter III, § 1, 3.107; § 5, 3.505.

In this regard, the Legislator-Appellants, as elected members to Michigan's legislature, are given opportunities to vote to exercise their authority on bills regarding federal elections consistent with the constitutional mandate of the Elections Clause. The Elections Clause mandates that "legislatures," as defined by the respective

constitutions of each state, enact laws governing times, places, and manner of federal elections and, in turn, via their state constitutions, individual state legislators the right or privilege or duty, vis-à-vis their opportunity to vote on state laws governing federal elections, subject only to limitations within the federal constitutional (e.g., congressional acts (Elections Clause)) or state constitutional limitations (e.g.., gubernatorial vetoes).

Legislator-Appellants are claiming in this case that the process of Michigan Constitution, art. XII, § 2, for non-state legislatively-approved constitutional amendments passed to regulate federal elections violates their federal rights under the Elections Clause. In this way, the 2018, 2022 and future amendments are a complete disenfranchisement, nullification or withdrawal of the individual Legislator-Appellants' opportunity to vote on election laws regulating federal elections. The Appellant-Legislators' voting opportunities are provided to them under Michigan's Constitution and under the rules of both the State Senate and House of Representatives, as previously discussed, and are preserved as federal rights or privileges through the federal Elections Clause, albeit subject to congressional acts.

A short summary of Michigan state law-making provides a more accurate view of the individual Legislator-Appellants' law-making powers under the State constitution. There is no question regarding the role of the Legislator-Appellants in the General Assembly, Article II, section 9 creating a process for the people of Michigan to propose and enact or reject laws by initiative. By a similar procedural

process, via referendum, the people may approve or reject laws enacted by the legislature. Under such circumstances, if laws were enacted by the initiative process, "then the initiated law is not subject to the veto power of the governor," and cannot "be amended or repealed, except by a vote of the electors unless otherwise provided in the initiative measure or by ¾ of the members elected to and serving in each house of the legislature." *Mothering J. v. Atty. Gen.*, No. 362271, 2023 WL 444874, at *6 (Mich. App. Jan. 26, 2023), appeal granted, 991 N.W.2d 198 (Mich. 2023) quoting Mich. Const. art. II, § 9.

However, such an initiated state law, passed by referendum, is still subject to a Supremacy Clause analysis. II.B., *supra*. Such an initiated state law (that is, a law that is not an amendment to the state constitution) could still be amended or repealed by the members elected to each house of the legislature voting for such (by three-fourths super majority), subject to the Governor's veto. Mich. Const. art. II, § 9. Accordingly, the Legislator-Appellants' right or privilege or duty under the Elections Clause to regulate times, places, and manner of federal elections remains intact because the people are allowed under the State Constitution to act, in the first instance, as a "legislature," for the purpose of creating "normal" laws, but subject to an action by individual legislators.

But, this is not the case for state constitutional amendments made under the Michigan Constitution article XII § 2 amendment-by-petition process. The 2018 Proposal 3 and the 2022 Proposal 2 were not initiated laws, but amendments to the

Michigan Constitution under the amendment-by-petition process of Michigan Constitution, article XII, § 2, for non-state legislatively-approved constitutional amendments. Accordingly, each of the constitutional amendments, as alleged in the underlying complaint, derailed the Legislators' federal right or privilege to have the opportunity to vote and have an effect on the laws governing the times, places, and manner of federal elections.

The apparent "savings clause" under the 2018 Proposal 3, now Article II, § 4(2), stating that "[e]xcept as otherwise provided in this constitution or in the constitution or laws of the United States, the legislature shall enact laws to regulate the time, place and manner of all nominations and elections…" is of no remedy for the Legislators. The language "except as otherwise provided in this constitution," referring to the Michigan Constitution and the 2018 and 2022 amendments derails any right or privilege the Legislators have as to their individual opportunity to vote on federal election laws as now delineated under Article II as amended.

The 2018, 2022 and future amendments regulating federal elections are a complete disenfranchisement, nullification or withdrawal of the Legislators' voting opportunities. As previously discussed, the Legislators' voting opportunities are guaranteed through the state constitution and rules of both the State Senate and House of Representatives, recognized by the Michigan Supreme Court, and preserved as rights or privileges under the U.S. Constitution's Elections Clause, albeit subject to congressional acts.

In this regard, even if Appellees would be in error if they were to argue that the Michigan Constitution, grants of authority to the people of Michigan, as it "'establishes the electorate…as a coordinate source of legislation' on equal footing with the representative legislative body." *Arizona State Legislature v. Arizona Indep. Redistricting Commn.*, 576 U.S. 787, 795 (2015) (citations omitted). The electorate cannot be on equal footing with the representative legislative body because the Michigan Constitution, art. IV § 1, specifically identifies what is the "legislature"—the senate and house of representatives:

> Except to the extent limited or abrogated by article IV, section 6 or article V, section 2, the legislative power of the State of Michigan is vested in a senate and a house of representatives.

The Michigan Constitution does not recognize that, when citizens use the initiative or amendment authority, they are acting as a "legislature" or can be on "equal footing with the representative legislative body." Hence, the U.S. Supreme Court's dicta in *Arizona State Legislature*, regarding the Arizona State Constitution is not applicable to the Legislator-Appellants arguments now before this Court in regard to Michigan.

Even so, the individual legislator injury is apparent as it relates to the passage of the 2018, 2022 and future constitutional amendments. The process completely nullified or usurped the Legislator-Appellants' opportunity to vote as a right under the Elections Clause through the Michigan Constitution regarding federal election laws. This individualized injury of itself is neither an "institutional injury" nor abstract.

*Tennessee Gen. Assembly*, 931 F.3d at 514. The non-state legislatively-approved constitutional amendments were state procedural irregularities that undermined the Legislator-Appellants' rights or privileges under the U.S. Constitution nullifying their rights to an opportunity to vote on federal election laws. Under the Elections Clause, this federally-guaranteed "opportunity to vote" is for the state legislators. Under the Elections Clause, this federally-guaranteed "opportunity to vote" does not cover non-elected citizens voting for a state constitutional amendment to regulate federal elections. *See Coleman*, 307 U.S. at 438. The Michigan State Constitution and the House and Senate rules require legislative participation in the state law-making process to regulate federal elections.

Future, similar state constitutional amendments, which the Appellees contend are legally authorized, cause the same concrete and particularized injury to the Legislator-Appellants. Every time a similar constitutional amendment is adopted, the individual state legislator is deprived of the federally-guaranteed opportunity to vote on a state regulation of federal elections. And, such voting opportunities are how the Legislator-Appellants perform their duties and exercise their rights under the Elections Clause. The Sixth Circuit should recognized the standing of the Legislator-Appellants to adjudicate their Election Clause claims.

### E. Legislator-Appellants have met all of the standing requirements.

Based on the foregoing, Legislator-Appellants have standing as a party seeking Article III standing. Legislator-Appellants have shown that the deprivation of their

federal rights and privileges under the Elections Clause by Appellees' misuse of the state constitutional amendment process to regulate federal elections, which nullifies the Legislator-Appellants' federal rights or privileges, is an injury in fact, an invasion of a legally protected interest which is concrete and particularized, and actual or imminent. Legislator-Appellants have shown a causal connection between the injury, that is the Appellees' nullification of Legislator—Appellants' federal rights or privileges—and the conduct complained of—the Appellees' state constitutional amendment process which regulates federal elections without state legislative participation. Legislator-Appellants have also shown a likelihood of redressability by a favorable judgment because the district court can grant prospective declaratory and injunctive relief to deter and enjoin the Michigan's state constitutional amendment process regulating federal elections without state legislative participation.

III. **Precedent exists to support holding that Legislator-Appellants have concrete injuries particularized to them due to their federal rights or privileges granted under the Elections Clause being violated by Appelleees' misuse of the state constitutional amendment process regulating federal elections without state legislative participation.**

Without any nod to the rights and duties of the Legislator-Appellants under the Elections Clause, which would appear to be a natural starting point regarding federal election regulation, the district court merely characterized Legislator-Appellants' claim as an "institutional injury" and dismissed for lack of subject matter jurisdiction. Order and Opinion, R. 25, Page ID # 309. The district court relied on two relatively recent cases, *Virginia H. of Delegates v. Bethune-Hill*, 587 U.S. 658 (2019) and this Court's

decision in *State by and through Tennessee Gen. Assembly v. U.S. Dept. of State*, 931 F.3d 499 (6th Cir. 2019). *Id.* But, the Legislator-Appellants assert, the rationale to describe and find an "institutional injury" is misplaced.

In this case, when a legislator votes against the ratification of a law that are overridden and virtually held for naught due to an act of the executive branch regarding federal election laws, individual legislators have "a plain, direct and adequate interest in maintaining the effectiveness of their votes." *See, Coleman v. Miller,* 307 U.S. 433 (1939). Under such circumstances, individual legislators have standing to sue in federal court. *Id.*

## A. Courts recognize individual legislator standing in specific circumstances.

The Supreme Court has recognized individual legislator standing, under Article V of the U.S. Constitution, for state legislative ratification of federal constitutional amendments. *Coleman v. Miller,* 307 U.S. 433 (1939), distinguished in *Arizona State Legislature v. Arizona Independent Redistricting Comm.*, 576 U.S. 787, 803 (2015) (finding standing for the entire Arizona State legislature as a whole), and *Virginia House of Delegates v. Bethune-Hill*, 587 U.S. 658, 668 (2019) (holding no standing in circumstances where the Virginia house continued alone without the state senate). The same *Coleman* principle is applicable in this case under the described circumstances relating to state election laws governing federal elections.

Generally, cases about individual state legislator standing fall into three categories: "lost political battles, nullification of votes and usurpation of power." *Silver v. Pataki*, 755 N.E.2d 842, 847 (NY. Ct. App. 2001) (categorizing legislative standing case fact patterns). Indeed, there is no standing for individual legislators' lost political battles. But, standing may exist for the nullification or usurpation of legislator votes. *See, id.* (citing *Coleman*, 307 U.S. regarding vote nullification; *Dodak v. State Admin. Bd.,* 495 N.W.2d 539 for an example of legislative usurpation; *Raines v. Byrd*, 521 U.S 811 (1997) for lost political battles.) *Silver* involved a single New York Assembly member who, after voting and winning the passage of a bill, sued to claim a veto had unconstitutionally nullified his vote. The New York appellate court used the reasoning of *Coleman* to find the individual legislator had standing to challenge nullification of his personal vote. *Silver*, 755 N.E.2d at 847–48.

In *Coleman*, twenty Kansas state senators challenged the state legislature's ratification of a proposed amendment to the U.S. Constitution. The state senate had deadlocked on the amendment by a vote, and the lieutenant governor cast a tie-breaking vote in favor of ratification. *Id.* at 436. The claim of the objecting state legislators rested on the argument that the lieutenant governor did not have the power to break the tie in relation to proposed Article V federal constitutional amendments. *Id.* at 436. The Supreme Court held that the legislators had a plain, direct and adequate

interest in the effectiveness of their votes as a right and privilege under the U.S.

Constitution:

> Here, the plaintiffs include twenty senators, whose votes against ratification have been overridden and virtually held for naught…We think that these senators have a plain, direct and adequate interest in maintaining the effectiveness of their votes. Petitioners come directly within the provisions of the statute governing our appellate jurisdiction. They have set up and claimed a right and privilege under the Constitution of the United States to have their votes given effect.

*Id.* at 438. *Coleman* has been distinguished, but not overturned and similar to this case, deals with constitutionally-delegated powers. Here, Legislator-Appellants have a plain, direct and adequate interest in maintaining their ability to propose effective legislation, and to vote on bills that do regulate the time, place and manner of elections. *See e.g., id.*

*Raines v. Byrd,* 521 U.S. 811 (1997) and its progeny cases have not overturned *Coleman*, and they do not foreclose the narrow path for Legislator-Appellants to have standing in the circumstances they allege before this Court. In *Raines*, six disgruntled members of Congress who had voted against the Line Item Veto Act, which was enacted and signed into law, filed suit seeking a declaratory judgment that the Act was unconstitutional. *Raines,* 521 U.S. at 814–17. In denying standing, the Supreme Court noted that the plaintiffs' asserted injury to their legislative power was, in a real sense, inflicted by Congress upon itself. Indeed, the *Raines* plaintiffs had tried and failed to persuade Congress not to pass the Act. When Congress considered the Line Item Veto Act, the plaintiffs' votes "were given full effect. [Plaintiffs] simply lost that

vote." *Id.* at 824. In other words, their loss was a political one derived from losing the legislative vote as part of the legislative process, duly-separated from other branches of government.

The *Raines* Court expressed doubts that individual legislators who had lost a legislative battle could ever establish standing to assert an injury from that lost battle on behalf of either their chamber or Congress itself. In such a case, the Court stated, the plaintiffs' quarrel was with their colleagues in Congress and not with the executive branch. *Id.* at 830, n.11. The Court expressed a deep reluctance to let members who had lost a battle in the legislative process seek judicial intervention by invoking an injury to Congress as a whole. This difference of opinion between the plaintiffs and their respective chambers was not speculative; the Senate, together with the House leadership had filed an amicus brief urging that the law be upheld. *See Id.* at 818, n. 2. Plaintiffs' allegations were, the Court held, insufficient to establish a judicially cognizable vote nullification injury of the type at issue in *Coleman. Id.* at 824.

The *Raines* Court suggested individual legislator standing can be established when individual legislators show vote nullification of the sort at issue in *Coleman*: that a specific legislative vote was "completely nullified" by executive action despite a legislator-plaintiff having cast a vote that was "sufficient to defeat (or enact)" the act. *Id.* at 823. That is similar to Legislator-Appellant's claim that their votes have been preemptively nullified by the state petition-amendments to the time, place, and manner of elections.

Unlike *Raines*, Legislator-Appellants' quarrel is not with their colleagues in the state house or senate, but with the state executive branch whose actions in allowing and enforcing the Mich. Const. art XII § 2 amendment process to change the state constitution in the elections area specifically reserved for the legislative branch. Unlike *Raines*, this case does not involve legislators who voted, "simply lost that vote" and then sought to have the law invalidated. While some of the legislators in the house and senate are not impacted by the 2018 and 2022 amendments, Legislator-Appellants are. Just as in *Coleman*, the Legislator-Appellants votes and, opportunity to propose legislation, have been "stripped of their validity," and "denied [their] full validity in relation to the votes of their colleagues." *Id.* at 824 n. 7. And, just as in *Coleman,* Legislator-Appellants seek recovery based upon rights and privileges granted to them, and a duty charged to them through the U.S. Constitution. *Coleman*, 307 U.S. at 438.

As the Complaint alleges, the Michigan Constitution, Article 6, section 1, vests the Elections Clause legislative power in individual state legislators, and extends through the State Senate and House of Representative Rules. Complaint, R. 1, Page ID # 7 (¶ 30). *See e.g.*, Standing Rules of the House of Representatives in Accordance with the Michigan Constitution Article IV, section 13: Chapter II, Rules 12, 13; Chapter III, Rules 30, 31;[9] Senate Rules: Chapter I-Section 3, 1.302; Chapter III, Section 1, 3.107; Section 5, 3.505.[10] So, at least in this case, the Complaint alleges that

---

[9] *Supra* n.2.
[10] *Supra* n.3.

the Elections Clause reference to "legislature" confers federal rights onto the individual state legislators. *Id.*

To reiterate, the U.S. Supreme Court has taken this legal position on standing in *Coleman*, albeit under the provisions of the U.S. Constitution, Article V, for state legislative ratification of federal constitutional amendments, which was referenced in the *Arizona State Legislature* re-districting case under the Elections Clause:

> Closer to the mark is this Court's decision in *Coleman v. Miller*, 307 U.S. 433, 59 S.Ct. 972, 83 L.Ed. 1385 (1939). There, plaintiffs were 20 (of 40) Kansas State Senators, whose votes "would have been sufficient to defeat [a] resolution ratifying [a] proposed [federal] constitutional amendment." *Id.*, at 446, 59 S.Ct. 972.11 We held they had standing to challenge, as impermissible under Article V of the Federal Constitution, the State Lieutenant Governor's tie-breaking vote for the amendment. *Ibid. Coleman*, as we later explained in *Raines*, stood "for the proposition that legislators whose votes would have been sufficient to defeat (or enact) a specific legislative Act have standing to sue if that legislative action goes into effect (or does not go into effect), on the ground that their votes have been completely nullified." 521 U.S., at 823, 117 S.Ct. 2312. Our conclusion that the Arizona Legislature has standing fits that bill.

*Arizona State Legislature*, 576 U.S. at 803 (footnotes omitted).

To further emphasize this point, the U.S. Supreme Court recently provided guidance on who can litigate on behalf of a state or institution, as a state or institution in *Virginia House of Delegates*, in which the Court held: "Virginia, had it so chosen, could have authorized the House to litigate on the State's behalf, either generally or in a defined class of cases." *Virginia House of Delegates v. Bethune-Hill*, 587 U.S. 658, 664 (2019). The *Virginia* decision descends from, but is also distinct from *Arizona State*

*Legis.* 576 U.S. at 804. As mentioned, the Supreme Court had held in *Arizona* that

there was standing—using the logic of *Coleman* for granting standing to individual

legislators—to the entire legislature because "the Arizona Constitution's ban on

efforts to undermine the purposes of an initiative…. would "completely nullif[y]" any

vote by the Legislature, now or "in the future…."

In *Virginia*, both houses of the bicameral legislature had started in a lawsuit

together, but the House proceeded to appeal on behalf of the state without its Senate

partner in the legislative process, which negated its original standing basis. 587 U.S. at

665. Neither *Arizona*, nor *Virginia,* overruled or cabined *Coleman*, nor did either

decision foreclose individual legislator standing.

Additionally, while federal and state court standing is not identical, the

Michigan Supreme Court has recognized that individual state legislators may bring

legislative usurpation claims to challenge unlawful executive actions:

> Under limited circumstances, the standing of legislators to
> challenge allegedly unlawful executive actions has been recognized
> in the federal courts. *See, e.g., Coleman v. Miller*, 307 U.S. 433, 59
> (1939); *Kennedy v. Sampson*, 167 U.S. App. D.C. 192, 511 F.2d 430
> (1974); *Dennis v. Luis*, 741 F.2d 628 (C.A.3, 1984).

*Dodak v. State Admin. Bd.*, 495 N.W.2d 539, 555 (Mich. 1993), disapproved of by *Rohde*

*v. Ann Arbor Pub. Schools*, 737 N.W.2d 158 (Mich. 2007). And, the Michigan Supreme

Court has interpreted Michigan's Constitution to authorize individual legislators to

bring legislative usurpation claims under certain circumstances as it relates to

committee members' specific legal rights to participate in the legislative process:

Although this Court is not bound to follow federal cases regarding standing, we agree that *Pierce* lends support at least for the standing claim of plaintiff Jacobetti as a member of the House Appropriations Committee. As in *Pierce*, plaintiff Jacobetti has been denied a specific statutory right sufficient to confer standing. If, for purposes of considering this claim, we assume arguendo that § 3 of the State Administrative Board act was impliedly repealed, then intradepartmental transfers could be made only by the state budget director in accordance with § 393 of the Management and Budget Act. That act confers upon plaintiff Jacobetti a right to approve or disapprove such transfers. Under these circumstances, the board's actions, if recognized, would deprive plaintiff Jacobetti "of that specific statutory right to participate in the legislative process." *Pierce*, 225 U.S.App.D.C. at 63, 697 F.2d at 305.

*Dodak*, 495 N.W.2d at 545 (footnotes omitted). Other states have also authorized individual legislators to bring legislative usurpation claims in state courts.[11]

## B. There are current barriers on Legislator-Appellants voting in the constitutional amendment process and regarding the results of the constitutional amendment process.

We turn next to a critical admission of the Defendant-Appellees. In their Brief in Support of Defendant's Motion to Dismiss, the Appellees admit that Legislator-Appellees would have difficulty performing their duties to regulate elections because

---

[11] *See, e.g., Romer v. Colorado Gen. Assembly*, 810 P.2d 215, 218-219 (Colo. 1991) (concluding that the governor had standing to sue the legislature and noting the court's past holdings that the legislature "had standing to bring [a declaratory-judgment] action against the governor to challenge a particular construction given certain statutes by the governor" and "to challenge the constitutional validity of gubernatorial vetoes"); *Fumo v. City of Philadelphia*, 972 A.2d 487, 502 (Pa. 2009) (determining state legislators had standing for an alleged usurpation of their authority as members of the General Assembly); see also *Wisconsin Legislature v. Palm*, 942 N.W.2d 900 (Wis. 2020) (holding that the legislature had standing to challenge regulations issued by the Secretary-designee of the Department of Health Services).

the constitutional amendments adopted in 2018 and 2022 would preclude the legislators from passing legislation that runs contrary to the amendments:

> To be sure, a judgment in Plaintiffs' favor would remove a current barrier theoretically preventing the legislature from enacting an election regulation that contravenes the 2018 and 2022 Amendment….

Brief to Dismiss, R. 16, Page ID # 197. Although the Defendant-Appellees' premise is incorrect having identified the "theoretic[al] prevent[ion of] the legislature from enacting." In fact, the Legislators would be deprived of their federal rights and privileges to vote on changes to election law that run counter to the unduly enacted constitutional amendments. However, the Defendant-Appellees do acknowledge the present consequence of the 2018, 2022, and potential constitutional amendments in the future as a "current barrier" to the legislators' abilities to perform their duties. This suppression of the legislators' rights and duties reflects the rationale for the underlying complaint and the relief sought. *See id.*

This Court has not opined that individual legislators never have standing to sue in federal court. As this Court succinctly stated in *State by and through Tennessee Gen. Assembly v. U.S. Dept. of State*, (a decision relied upon by the district court), when allegations are asserted regarding a merely institutional injury, individual legislators would not have Article III standing:

> An individual legislator, or group of legislators, do not have Article III standing based on an allegation of an institutional injury, or a complaint about a dilution of legislative power because "[a]n

> individual legislator cannot 'tenably claim a personal stake' in a suit
> based on such an institutional injury."

*Tennessee Gen. Assembly*, 931 F.3d at 514 (internal citations omitted). Here, the

underlying allegations are not those of the legislature but about the direct rights and

duties of individual legislators provided to them under the Elections Clause—and

protected by 42 U.S.C. § 1983.

Indeed, an individual legislator's loss of the right or privilege for the

opportunity to vote on the times, places, and manner of federal elections granted to

him or her through the Elections Clause is not, as demonstrated, an "institutional

injury." The Legislators have not asserted in their complaint that the legislature "has

suffered…disruption of the legislative process, a usurpation of its authority, or

nullification of anything it has done…." *Tennessee Gen. Assembly*, 931 F.3d at 514

(emphasis added). The Legislator-Appellants make no claim of injury to the body-

politic—the state legislature—because the injury the Legislators do claim is their own.

Thus, the Legislator-Appellants have Article III standing, separate and apart

from the state legislature. The complaint alleges a live controversy under the Elections

Clause identifying a concrete injury regarding a deprivation of an actual, legally-

protected interest connected to a federal right or privilege guaranteeing the

opportunity to Legislator-Appellants to vote on state laws regulating federal elections.

Because the 2018 and 2022 amendments were adopted without state legislative

approval, the Legislator-Appellants seeks prospective declaratory and injunctive relief,

that even the Governor has admitted is available. *See* Defendant's Brief in Support of Motion to Dismiss, R. 16, Page ID # 197.

## CONCLUSION

For the foregoing reasons, the district court decision should be reversed.

Respectfully submitted,

/s/Erick G. Kaardal
Erick G. Kaardal (MN No. 229647)
Elizabeth A. Nielsen (MI No. P87437)
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: 612 341-1074
Email: kaardal@mklaw.com
Email: nielsen@mklaw.com

*Counsel of Record for Appellants*

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 10,252 words, excluding the parts of the brief exempted by Fed. R. App. P. 32 (a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in size 14 Garamond font.

Dated: July 1, 2024

      /s/Erick G. Kaardal
Erick G. Kaardal, #229647
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: 612-341-1074
Email: kaardal@mklaw.com
*Attorneys for the Appellants*

# USE OF AI TECHNOLOGY CERTIFICATION

Counsel attests to the best of counsel's ability that appropriate steps to verify whether AI technology systems have been used in preparation of this submission, and if used, appropriate steps were taken to verify the truthfulness and accuracy of facts and citations of that content before submission to this Court. This submission did rely upon the ordinary or customary research tools and other available research sources such as, but not limited to, Westlaw or Lexis.

Dated: July 1, 2024

/s/Erick G. Kaardal
Erick G. Kaardal, (MN No.229647
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: 612-341-1074
Email: kaardal@mklaw.com
*Attorneys for the Appellants*

# CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2024 the foregoing document was served on all parties or their counsel of record through the CM/ECF.

Dated: July 1, 2024

/s/Erick G. Kaardal
Erick G. Kaardal, #229647
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: 612-341-1074
Email: kaardal@mklaw.com
*Attorneys for the Appellants*

# ADDENDUM

*Appellants' 6 Cir. R. 30(g) Designation of Relevant Court Documents*

| Record Citation | Date Filed |
|---|---|
| Complaint, R. 1, Page ID # 1-16 | 09/28/23 |
| Complaint Exhibits A-B, R. 4, Page ID # 24-30 | 09/28/23 |
| Defendant's Motion to Dismiss, R. 15, Page ID # 173-175 | 01/08/24 |
| Defendant's Brief in Support of Motion to Dismiss, R. 16, Page ID # 176-205 | 01/08/24 |
| Plaintiff's Brief in Opposition to Motion to Dismiss, R. 19, Page ID 215-258 | 02/05/24 |
| Order and Opinion, R. 25, Page ID # 300-312 | 04/10/24 |
| Judgment, R. 26, Page ID # 313 | 04/10/24 |
| Notice of Appeal, R. 27, Page ID 314-315 | 05/03/24 |